IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WANDA AL-RAHEEM, | ) | 1:10-2064 AWI GSA |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER ON |
| | ) | DEFENDANT'S MOTION TO |
| COVENANT CARE, | ) | DISMISS AND AMENDED |
| | ) | MOTION TO DISMISS |
| Defendant. | ) | |
| _____ | ) | Documents # 6 & #10 |

This is a civil rights action pursuant to Title VII of the Civil Rights Act of 1964 for damages and equitable relief by *pro se* plaintiff Wanda Al-Raheem ("Plaintiff") against defendant Covenant Care ("Defendant").  In the instant motion, Defendant seeks to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

The complaint in this action was filed on November 8, 2010.  The claims for relief in the complaint are alleged pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e).  The complaint purports to allege claims for "hostile work environment," "harassment," "retaliation" and "discrimination."  Although the claims are not set out separately or formally, the court interprets Plaintiff's complaint as alleging claims for hostile work environment or harassment, retaliation and disparate treatment.

Plaintiff is an African-American woman was hired by Defendant in September 2006 as a "Business Office Manager" at Turlock Nursing Rehabilitation Facility, a Defendant-owned medical treatment facility.  At the time of Plaintiff's employment, Michael Darouze was the executive director and the person to whom Plaintiff reported.  Somewhat confusingly, Plaintiff's

complaint alleges that a person named Toni Perkins was both Defendant's "accounts receivable consultant" and one of Defendant's employees.  Although the complaint alleges that Perkins continuously harassed Plaintiff by assigning unreasonable work output goals, issuing conflicting orders to office staff and attempting to micro-manage Plaintiff's workflow, the complaint is not entirely clear as to the relationship between Plaintiff and Perkins or as between Perkins and Defendant.  In particular, it is not clear whether Perkins had authority to hire, fire or direct workers, including Plaintiff.

The complaint alleges that Perkins acted to undermine Plaintiff's efforts to meet company goals and objectives such that Plaintiff felt it necessary to complain to Darouze, who failed to act to resolve the situation.  The complaint is not clear on the issue of whether Darouze had supervisory authority over Perkins.  The complaint alleges that following Plaintiff's complaint to Darouze, Perkins began an incessant campaign of harassment in retaliation for what Plaintiff contends was the protected activity of complaining about Perkins' subversive and intimidating behavior.  Plaintiff alleges the retaliatory harassment included the imposition of highly unreasonable job demands; including requiring that Plaintiff process rejected Medicare part A and B claims dating back four years in one day.  Plaintiff also alleges Perkins embarked on a campaign of interference by calling Plaintiff every sixty minutes and demanding that Plaintiff answer e-mail inquiries immediately while she was trying to process the old Medicare claims.

Plaintiff alleges that ultimately the stress caused by Perkins' harassment and the failure of Darouze or anyone from Covenant Care to address Plaintiff's complaints required Plaintiff to be placed on medical leave by her physician.  After a three-day term of medical leave Plaintiff returned to work and complained that Perkins "was unreasonable, discriminatory, unprofessional, and was placing [. . .] Plaintiff's health in jeopardy."  Doc. #1 at ¶ 40.  Plaintiff alleges Darouze was unresponsive to Plaintiff's complaints.  At paragraphs 68 and 69 of the complaint Plaintiff alleges:

> The Plaintiff was retaliated against for "protected Activity" by Toni Perkins after the Plaintiff verbally complained to Executive Director Michael Darouze about

> [Perkins'] work ethic. [Perkins'] retaliation towards the Plaintiff became extremely pervasive in every task she assigned to the Plaintiff. This constitutes an adverse employment action. ¶ The Plaintiff was discriminated against by Toni Perkins as the Plaintiff was treated differently from the previous office manager who was white.

The complaint alleges that Plaintiff was assigned to medical leave by her physician from May 2, 2007, to May 16, 2007. Medical leave was subsequently extended by Plaintiff's physician to June 17, 2007. Plaintiff alleges that:

> On May 15, 2007, upon the Plaintiff returning to the business office, to drop off medical leave extension notice, the Plaintiff discovered a <u>Corrective Disciplinary Action</u>, dated on May 2, 2007, [the date of commencement of her medical leave] and signed by Executive Director Michael Darouze. This write up form, listed unreasonable job deadlines, termination. This constitutes an adverse employment action."

Doc. # 1 at ¶ 76.

At paragraph 84 of the complaint, Plaintiff alleges:

> On May 31, 2007, the Plaintiff decided to resign from the position of Business Office Manager at Covenant Care/TNR, which was not a voluntary choice, the thought of going bact to work continued to make the Plaintiff physically and emotional[ly] ill. The Plaintiff's resignation was a constructive discharge. The Plaintiff's objective was to return to work, and hopefully stay employed with Covenant Care until the Plaintiff retired – as the first few months of the Plaintiff['s] employment was enjoyable. However, the Plaintiff['s] husband received a temporary job out of state and the Plaintiff decided to join him as the Plaintiff, was too emotionally depressed to be left alone.

Defendant's amended motion to dismiss was filed on February 23, 2011. On April 14, 2011, the court vacated the date set for oral argument on Defendant's motion to dismiss and took the matter under submission. Plaintiff filed an opposition brief on April 18, 2011.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("<u>Twombly</u>"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question,

Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

Section 703(a)(1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  "At the motion to dismiss stage, [the plaintiff] need not support [her] allegations with evidence, but must allege sufficient facts to state the elements of a hostile work environment [or retaliation] claim."  Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008).  In general, claims asserted pursuant to Title VII are guided by the same legal principles that apply to claims asserted pursuant to 42 U.S.C. § 1981.  Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003).  The claims that the court understands Plaintiff to have asserted fall into three categories; hostile work environment or harassment,

4

1    retaliation and disparate treatment.  The court will consider the adequacy of Plaintiff's pleadings

2    with respect to each claim in turn.

3    **I. Hostile Work Environment or Harassment**

4           The terms "hostile work environment" and "harassment" are used interchangeably in

5    that the elements of a claim under either label are the same.  The elements are (1) the plaintiff

6    "'was subjected to verbal or physical conduct' because of her race, (2) 'the conduct was

7    unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of

8    [the plaintiff's] employment and create and abusive work environment.' [Citation.]" Manatt,

9    339 F.3d at 797 (reciting elements for hostile work environment claim and quoting Kang v. U.

10   Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 202)); Martinez v. Marin Sanitary Services, 349

11   F.Supp.2d 1234, 1251 (N.D. Cal. 2004) (reciting same elements for claim of racial harassment).

12          Plaintiff's claim for hostile work environment or harassment fail because the complaint

13   fails to allege that Plaintiff was subject to the objectionable conduct *because of her race*.

14   Putting aside the question of whether the harassment Plaintiff suffered was sustained or severe

15   enough to alter the conditions of Plaintiff's employment, a complaint must allege facts to

16   indicate that the harassment was motivated by racial animus.  See Johnson, 534 F.3d at 1123 (§

17   1981 (and therefore Title VII) only provides a cause of action for harassment based on race or

18   ethnicity); Rosa v. Scottsdale Mem. Health Systems, Inc., 132 F.3d 38, 1997 WL 753359 (9th

19   Cir. (Ariz.) 1997) at *1 (holding harassment claim fails because plaintiff failed to allege

20   incidents contributing to hostile environment were racial in nature).

21          Although Plaintiff alleges behavior on the part of Perkins that could legitimately be

22   construed as harassing, there is no indication at all that Perkins' behavior had anything at all to

23   do with racial animus.  The fact that Plaintiff is African-American and Perkins is (presumably)

24   White does not suffice to establish a racial basis for the complained-of activity.  If anything, the

25   facts alleged in Plaintiff's complaint tend to characterize a distinctly non-racial piece of office

26   politics turned power-play.  Missing are any allegations that Perkins' words, actions or threats

27   were were racial in nature or were aimed at Plaintiff because of Plaintiff's race.  Plaintiff's

28

                                                    5

claim for relief under Title VII based on the theory of hostile work environment or racial

harassment therefore fails to state a claim for which relief can be granted.

**II. Retaliation**

To state a claim for retaliation under Title VII, a plaintiff "must establish that; (1) she

engaged in a protected activity, such as the filing of a complaint alleging racial discrimination,

(2) the [defendant] subjected her to an adverse employment action, and (3) a causal link exists

between the protected activity and the adverse action." Manatt 339 F.3d at 800 (internal

citations and footnotes omitted). Plaintiff alleges she engaged in protected activity when she

complained to Darouze about Perkins' subversion of Plaintiff's effectiveness in her job.

Plaintiff's understanding what constitutes a protected activity is inconsistent with what is

established by case law.

> "Title VII's statutory 'opposition clause' prohibits an employer from retaliating
> against an applicant or employee 'because he has opposed any practice made an
> unlawful employment practice,'" such as discrimination based on race, sex,
> religion, sex, or national origin. *EEOC v. Luce, Forward, Hamilton & Scripps*,
> 303 F.3d 994, 1005 (9 Cir. 2002) (citing 42 U.S.C. § 20000e-3(a)); *see, e.g.*,
> *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir.
> 2002) ("Title VII allows employees to freely report actions that they reasonably
> believe are discriminatory, even if those actions are in fact lawful."). In addition,
> Title VII makes "it unlawful for an employer to discriminate or retaliate against
> an employee or an applicant for employment because that person 'has made a
> charge, testified, assisted, or participated in any manner in a . . . Proceeding.'"
> *Luce*, 303 F.3d at 1006 (ellipses in original) (citation omitted). In sum,
> "[p]rotected activity includes the filing of a charge or a complaint, or providing
> testimony regarding an employer's alleged unlawful practices, as well as
> engaging in other activity intended to 'oppose[]' an employer's discriminatory
> practices." *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d [1185,
> 1197 (9th Cir. 2003)] (brackets in original).

Guerrero v. Hawaii, 662 F.Supp.2d 1242, 1259-1260 (D. Hawaii 2009).

While an employee need only show that she had a "reasonable belief" that the practice

she opposed/complained off was unlawful, Trent v. Valley Electric Ass'n, 41 F.3d 524, 526,

(9th Cir. 1994), the reasonable belief must be rooted in the understanding that the practice

opposed is made unlawful by Title VII. See Lee v. Potter, 2008 WL 4449568 (N.D. Cal. 2008)

at *8 ("Plaintiff cannot reasonably demonstrate that complaining about mismanagement as

waste is the same as opposing *discrimination* under Title VII; accordingly, plaintiff's

6

participation in the petition is not a protected activity under Title VII.").  Plaintiff has provided

no evidence that the activity complained of, however hostile, rude, distressful or unwarranted it

may have been, is in the nature of activity prohibited by Title VII.  Plaintiff has therefore failed

to allege a claim for retaliation that is cognizable under Title VII.  Because the court finds that

Plaintiff did not engage in protected activity and therefore cannot state a claim for retaliation

under Title VII, the court need no decide whether Plaintiff's allegations with regard to adverse

employment action and causal link are met.

**III.  Claim for Disparate Treatment**

The elements of a disparate treatment claim under Title VII are (1) membership of the

plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position

in issue; (3) an adverse employee action; and (4) more favorable treatment of similarly situated

individuals outside the plaintiff's protected class.  See Davis v. Team Elec. Co., 520 F.3d 1080,

1089 (9th Cir. 2008).  Essentially the same claim can be stated in the more general context of

racially discriminatory treatment by recasting the elements as follows: (1) the plaintiff is a

member of a protected class; (2) plaintiff engaged in conduct similar to workers outside the

protected class; and (3) the plaintiff was disciplined more harshly than non-class members who

engaged in similar conduct.  See, e.g., Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105-

1106 (4th Cir. 1985).

Plaintiff's complaint consists of an initial conclusory assertion that the facts of the case

constitute hostile work environment, retaliation and discrimination.  The remainder if the

complaint is a single lengthy narrative that does not organize alleged facts around those three

legal theories.  Rather, the court is left to pick through the alleged facts to see if any

combination of alleged facts state a claim for which relief can be granted under any of the three

theories.  While the court has had little difficulty finding the facts, or lack of facts, that are

applicable to Plaintiff's first two claims for relief; the court has had a good deal more difficulty

determining what facts are intended to support Plaintiff's claim for discrimination or disparate

treatment.

There is no question that Plaintiff is a member of a protected class.  There is also no dispute that Plaintiff satisfied the qualifications of her position.  There is, however, considerable doubt whether Plaintiff has experienced an adverse employment action within the meaning of Title VII.  An adverse employee action is one that materially affects the "compensation, terms, conditions or privileges of employment."  42 U.S.C. § 2000e-2(a)(1); Chuang v. University of California, 225 F.3d 1115, 1125-1126 (9th Cir. 2000).

> The Ninth Circuit has recognized that only "non-trivial" employment actions, such as "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion"qualify as adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  "[A]ssigning more, or more burdensome, work responsibilities is an adverse employment action." *Davis*, 520 F.3d at 1089-190.  Transfers of job duties and undeserved low performance evaluations may also constitute adverse employment actions. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

Knight v. Brown, 2011 WL 2535159 (W.D. Wash. 2011) at *11.

There are three instances the court can identify where Plaintiff appears to allege adverse employee action, although it is not at all clear that Plaintiff has tried to tie any of the three instances directly to a formal discrimination or disparate treatment claim.  First, Plaintiff alleges that on a number of occasions that Darouze was unresponsive to Plaintiff's complaints concerning Perkins' behavior.  While the failure of a manager to respond to complaints of racial harassment or retaliatory treatment based on exercise of activities protected by Title VII may constitute adverse employment actions, see, McAllister v. Trendwest Resorts, Inc., 2005 WL 189714 (D. Or. 2005) at *5, the failure of management to take action on complaints that do not directly implicate protected activities or racially discriminatory conduct are not in the nature of employer actions constituting adverse employment actions.  See Knight, 2011 WL 2535159 at *12 (failure of managers to follow up disciplinary report not adverse employment action).  The court concludes Plaintiff has failed to allege facts sufficient to show an adverse employment action was taken when Darouze was unresponsive to Plaintiff's complaints concerning Perkins' behavior.

Additionally, Plaintiff alleges the "Corrective Disciplinary Action" document that she

1   found on her May 15, 2007, visit to the business office constituted an adverse employment

2   action.  The court has reviewed Plaintiff's allegations with regard to the Corrective Disciplinary

3   Action and finds the allegations are simply factually insufficient to allege a claim.  The

4   complaint alleges the "write up form listed unreasonable job deadlines, termination."

5   Complaint at ¶ 76.  The court is at a loss to understand what Plaintiff is alleging.  Did the

6   Corrective Disciplinary Action purport to terminate Plaintiff?  What was the meaning of the

7   reference to "unreasonable job deadlines?"  In addition, there is no indication whether the

8   Corrective Disciplinary Action represents a completed action or merely a notice of a potential

9   action that is subject to further inquiry and review.  Defendants contend the alleged Corrective

10  Disciplinary Action is not relevant to Plaintiff's action because no employment action was ever

11  taken as a consequence of the form because Plaintiff resigned on May 31, 2007.  Based on

12  Plaintiff's pleadings the court must agree that the alleged Corrective Disciplinary Action does

13  not amount to an adverse employment action because Plaintiff did not allege that she

14  experienced any change in employment status as a result of that document.

15          Plaintiff also alleges she suffered an adverse employment action when her job

16  responsibilities were significantly increased both in quantity and difficulty.  As previously

17  noted, "assigning more, or more burdensome, work responsibilities is an adverse employment

18  action."  Davis, 520 F.3d at 1089-190.  In this instance, the problem with Plaintiff's allegation is

19  simply that the complaint does not provide the necessary factual specificity to establish that the

20  unreasonable job demands were actually imposed.  In several places in the complaint Plaintiff

21  appears to contest the idea that her position or authority was subordinate to that of Perkins.

22  When Plaintiff complains to Darouze that Perkins is behaving as though she were Plaintiff's

23  boss, Darouze replies that Plaintiff should not "let [Perkins] run you away from this place"

24  implying that Perkins lacked authority to change Plaintiff's work responsibilities or to discipline

25  Plaintiff for failure to comply with imposed changes.  The complaint alleges that Perkins was a

26  regional accounts receivable consultant without explaining what the job title implies.  Plaintiff

27  also alleges Perkins was "hired by Covenant Care for past duties of a Business Office Manager"

28

without any explanation of what that means.  Covenant Care is the Defendant in this action and in order to establish that she suffered discriminatory treatment because of Perkins' action, Plaintiff will need to explain the connection between Perkins and Defendant and between Perkins and Plaintiff.

**IV.  Leave to Amend**

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).  "The requisite degree of proof necessary to establish a *prima facie* case for [a] Title VII [claim] . . . is minimal and does not even need to rise to the level of a preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  Based on the facts alleged in Plaintiff's complaint, some of Plaintiff's claims for relief seem closer to being adequately pled than others.  However, the court cannot say that any one of Plaintiff's claims cannot be saved by amendment of the pleading.  Leave to amend will therefore be granted.

Plaintiff will be granted twenty-one days from the date of issuance of this order to submit an amended complaint.  If Plaintiff chooses to amend her complaint, the court strongly recommends Plaintiff pay attention to the legal elements of each legal theory of recovery under Title VII and organize facts and allegations around an applicable theory or theory of recovery.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendant's motion to dismiss is GRANTED.  Plaintiff's complaint is hereby DISMISSED in its entirety. Leave to amend is GRANTED.  Any amended complaint shall be filed and served not less than twenty-one (21) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   September 30, 2011

CHIEF UNITED STATES DISTRICT JUDGE