IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA AL-RAHEEM, ) | 1:10- cv-2064 AWI GSA |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |
| v. ) | |
| ) | |
| COVENANT CARE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | Doc. # 34 |

This is a civil rights action pursuant to Title VII of the Civil Rights Act of 1964 for damages and equitable relief by *pro se* plaintiff Wanda Al-Raheem ("Plaintiff") against defendant Covenant Care ("Defendant"). Currently before the court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). For the reasons that follow, Defendant's motion will be granted.

## PROCEDURAL HISTORY

Plaintiff's original complaint and first amended complaint were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on October 3, 2011, and on June 11, 2012, respectively. Plaintiff's First Amended Complaint was dismissed with regard to all claims asserted therein with prejudice except that leave to amend to plead a claim for disparate treatment was granted. The currently operative Second Amended Complaint ("SAC") was filed on July 9, 2012. Plaintiff continues to represent herself in this action. Defendant's motion to dismiss was filed on July 20, 2012. As of this writing, no opposition to Defendant's motion to dismiss has been filed.

## FACTUAL BACKGROUND

Plaintiff's SAC is a much trimmed-down version of the previous complaints. Although

there is nothing in the SAC that conflicts with Plaintiff's prior allegations, the allegations in the SAC are focused on the single claim for relief that Plaintiff was allowed to amend in the court's memorandum opinion and order of June 11, 2012; the claim of disparate treatment in violation of section 703(a)(1) of Title VII, 42 U.S.C. § 2000e(a)(1).  The facts of this case have been set out in the court's previous decisions and need not be repeated here in their entirety.  Primarily, what Plaintiff's SAC does is clarify to a considerable extent the work relationship between the three major actors.  At the time relevant to this action Plaintiff was the Business Office Manager ("BOM") for the Covenant Care Turlock Nursing Rehabilitation facility ("TNR").  Michael Darouze was the Executive Director ("ED") of the facility and Toni Perkins is described as a "regional accounts receivable consultant," who is apparently a full-time employee of the corporate headquarters.

Plaintiff alleges that Perkins, in her role as regional accounts receivable consultant, was assigned to act as a "resource" to several nursing care facilities belonging to the corporation in the central valley area.  According to the SAC, Perkins had authority to *recommend* firing or other disciplinary action to the ED but presumably lacked authority to undertake such measures on her own.  The BOM did not report to Perkins but was apparently required to work with Perkins to address the backlog of accounts receivable dating back some four years.  Plaintiff's SAC describes the tension between Plaintiff and Perkins as arising from a difference of opinion as to the time required to correct the 4-year back log while keeping current with newly incoming receivables.  It was Plaintiff's opinion that it would be possible to correct and bill up to about 150 of the old claims per eight hour day and still maintain current accounts receivable.  Perkins demanded Plaintiff process in excess of 300 claims in one day.   Doc. # 33 at 3:14-19.
Plaintiff's SAC alleges that White BOM's were not required to process over 300 claims per day.  Plaintiff is African-American.

Plaintiff next alleges, somewhat confusingly, that she was directed by Perkins to correct and re-bill some 500 Medicare claims dating back four years.  Plaintiff alleges she was directed by Perkins to accomplish the corrections to the Part A claims in one day and to accomplish the

corrections to the Part B claims in one day despite telling Perkins that it would be unreasonable to think that anyone could "clean up over 500 plus part B claims in one day, while at the same time, preparing for a month end close." Doc. # 33 at 4:1-2. Plaintiff alleges that the ED was apprized of Plaintiff's objections to Perkins' demands but did nothing to intervene. Plaintiff alleges she was subject to constant nagging by Perkins and alleges that other, non-African-American BOM's in the central valley did not receive similar treatment.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

**DISCUSSION**

While Plaintiff's original complaint alleged what the court interpreted as a claim of discrimination under Title VII under a theory of disparate treatment, Plaintiff's First Amended Complaint did not. Consequently, the observations the court made with regard to the requirements of pleading a claim on the ground of disparate treatment were set forth in the court's order of October 3, 2011, dismissing Plaintiff's original complaint (the "October 3 Order"). In that order, the court pointed out two areas of deficiency that are relevant to this discussion. First, the court noted the elements of a disparate treatment claim as discussed above and opined that the court could not derive facts from the complaint sufficient to support those elements. Second, the court observed it lacked information regarding the work relationship between Perkins and Plaintiff so that it was not possible to determine whether Perkins' actions were "employment actions" within the meaning of Title VII. As discussed below, these problems persist.

**I. Plaintiff's Title VII Claim Under Disparate Treatment Theory is Inadequately Pled**

Section 703(a)(1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "At the motion to dismiss stage, [the plaintiff] need not support [her] allegations with evidence, but must allege sufficient facts to state the elements of a [. . .] [Title VII] claim." Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008). In prior decisions in this action the court has addressed Plaintiff's efforts to plead a Title VII claim under the theories of hostile work environment, disparate treatment and retaliation. It bears emphasis that a plaintiff seeking to state a claim under any of these different theories of liability under Title VII is ultimately burdened with the same requirement: to prove by a preponderance of the

evidence that the defendant intentionally discriminated against the plaintiff on impermissible grounds – race or ethnicity. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("Burdine"). Where, as often is the case, direct proof of discriminatory intent is not possible, the plaintiff must show that she suffered adverse employment action "under circumstances which give rise to an *inference* of unlawful discrimination." Id. (italics added).

Disparate treatment is a theory of liability under Title VII that is applicable where direct evidence if discriminatory intent is lacking. The elements of a *prima facie* claim for disparate treatment under Title VII are (1) membership of the plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position in issue; (3) an adverse employee action; and (4) more favorable treatment of similarly situated individuals outside the plaintiff's protected class. See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Essentially the same claim can be stated in the more general context of racially discriminatory treatment by recasting the elements as follows: (1) the plaintiff is a member of a protected class; (2) plaintiff engaged in conduct similar to workers outside the protected class; and (3) the plaintiff was disciplined more harshly than non-class members who engaged in similar conduct. See, e.g., Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105-1106 (4th Cir. 1985); see also, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (stating the elements for the demonstration of unlawful discrimination are flexible according to the factual situation in each case).

The critical feature of a *prima facie* claim under Title VII claim under a theory of disparate treatment is that facts are alleged that allow the court to use *inference*, rather than direct evidence, to arrive at the conclusion that evidence exists that, if proven to a jury, would allow a jury to find illegal racial discrimination motivated the defendant's actions. The facts of a successful claim for disparate treatment must be sufficient to allow the court to reason as follows: (1) several employees were in the same factual situation as the plaintiff; *and* (2) plaintiff is in a protected class – i.e. is African American; *and* (3) the employer has taken an adverse employment action against the plaintiff that is more extreme, harsh, unreasonable or

otherwise disadvantageous than actions taken toward non-African-Americans; *therefore*, the most reasonable explanation is that racial discriminatory intent motivated the difference in treatment.  If any one of these elements is not supported by the plaintiff's allegations, then the inference cannot be made and the plaintiff's *prima facie* claim fails.

Plaintiff's Title VII claim under the legal theory of disparate treatment fails because Plaintiff failed to plead facts, that if proven, would satisfy the first of the elements.  That is, Plaintiff has failed to plead facts to show that the non-African American BOM's working at Defendant's other nursing care facilities in the central valley were facing the same backlog of claims.  Plaintiff alleges that "Perkins did not demand all the white BOM to clean up over 1000 back-log claims in 2 days." Doc. # 33 at 4:16-17.  What is missing is any allegation that the other "white" business office managers were faced with one thousand back-log claims, or any back-log claims at all.  This may seem like a minor point, but it is not.  The cornerstone of the inference of racial discrimination being the cause of disparate treatment is the similarity between the Plaintiff and a larger of a group of workers who are facing the same situation.  The inference of racial discrimination can only arise if there are several workers facing the same situation and *only* the African-American worker (or workers) is/are subject to adverse job action.  Absent any facts to show that there were other business office managers in the same position – that is, facing substantial backlogs of Medicare claims – Plaintiff's treatment, however mean-spirited or abusive it may have been, cannot be assumed to have arisen as a result of racial prejudice.

**II.  No Adverse Job Action**

In its October 3 Order, the court noted there was "considerable doubt whether Plaintiff has experienced an adverse employment action within the meaning of Title VII." Doc. # 18 at 8:4-6.  An adverse employee action is one that materially affects the "compensation, terms, conditions or privileges" of the employee. 42 U.S.C. § 2000e-2(a)(1); Chuang v. University of California, 225 F.3d 1115, 1125-1126 (9th Cir. 2000).

> The Ninth Circuit has recognized that only "non-trivial" employment actions, such as "termination, dissemination of a negative employment reference,

> issuance of an undeserved negative performance review and refusal to consider for promotion"qualify as adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "[A]ssigning more, or more burdensome, work responsibilities is an adverse employment action." *Davis*, 520 F.3d at 1089-190. Transfers of job duties and undeserved low performance evaluations may also constitute adverse employment actions. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

Knight v. Brown, 2011 WL 2535159 (W.D. Wash. 2011) at *11.

The court's October 3 Order noted that, although the imposition of more or more burdensome work responsibilities might be an adverse employer action, the court could not find evidence showing that such conditions were actually imposed because it could not determine from the complaint whether Perkins had the authority to impose such burdens on Plaintiff against her will. Plaintiff's SAC admits that, in fact, Perkins lacked authority to significantly alter Plaintiff's job duties. Plaintiff makes it clear that she reported to the ED and that the ED and Perkins had no supervisory authority over each other. Given those allegations, the court cannot conclude that the additional work responsibilities Plaintiff complains of were actually imposed. As Plaintiff's SAC alleges, Perkins' power over the conditions of Plaintiff's employment were advisory only. So far as the allegation in Plaintiff's SAC go, they only establish that Perkins' powers over Plaintiff amount to no more than the persuasiveness that arises from bullying and intimidation. Perkins' threat that she would *recommend* that Plaintiff be disciplined or terminated cannot be said to rise to the level of "non-trivial" employment actions within the meaning of Title VII. Further, Plaintiff's claim that she suffered an adverse employer action is undercut by her allegation that her supervisor's only comment was that Plaintiff should not let Perkins "run [Plaintiff] out of here."

The court concludes that Plaintiff's SAC does not allege facts sufficient to support the claim that Plaintiff suffered an adverse employer action within the meaning of Title VII. Based on this conclusion and the conclusion that Plaintiff's SAC fails to allege the element of *similarly situated* employees who are not African-American, the court concludes that Defendants are entitled to dismissal of Plaintiff's SAC.

/ / /

### III. Leave to Amend

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986). A total of three complaints have been alleged and rejected. While Plaintiff's SAC is a good deal more succinct and to the point than previous efforts, it does not appear to the court that Plaintiff will be able to amend the complaint to allege facts to show that she suffered an adverse employment action within the meaning of Title VII. In addition, it seems to the court that the elements of proof for a claim under the theory of disparate treatment have been explained in prior orders to the extent that Plaintiff would likely have pled specifics concerning other business office manager's experiences if she could. In particular, the court finds it difficult to believe that Plaintiff would not have alleged that other, non-African American, BOM's were provided more time to clear up backlogged Medicare claims if that were the case. The absence of any effort to establish the similarity of the situation Plaintiff faced and the situation faced by other BOM's leads the court to conclude that Plaintiff may not be able to plead that there were other similarly situated BOM's.

The fact that repeated attempts have not brought Plaintiff any closer to successfully alleging a Title VII claim and the fact that Plaintiff did not file an opposition to the instant motion to dismiss are sufficient to lead the court that it is time to end this proceeding. Defendant's motion to dismiss will be granted without leave to amend.

THEREFORE, in accord with the foregoing, it is hereby ORDERED that Defendant's motion to dismiss Plaintiff's Second Amended Complaint is GRANTED. Plaintiff's Second Amended Complaint is hereby DISMISSED with Prejudice. The Clerk of the Court shall CLOSE THE CASE.

IT IS SO ORDERED.

Dated: October 11, 2012

CHIEF UNITED STATES DISTRICT JUDGE